UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------- x

TOWANDA VELEZ, as personal representative of    :
the estate of Anthony Velez, deceased,                      :
                                                                              :
                                       Plaintiff,              :
                                                                              :
                -against-                                            :
                                                                              :
CITY OF NEW YORK, RUDOLPH HALL, and      :
MICHAEL RUGGIERO,                                         :
                                                                              :
                                       Defendants.          :
-------------------------------------------------------------- x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  APR 1 2 2012  ★

BROOKLYN OFFICE

MEMORANDUM AND ORDER

04-CV-1775 (ENV) (MDG)

VITALIANO, D.J.

Plaintiff, the estate of Anthony Velez ("Velez"), represented by the decedent's mother, Towanda Velez, brought this action against, among others, defendants the City of New York and two NYPD officers, Rudolph Hall and Michael Ruggiero, alleging that defendants were liable for Velez being killed shortly after Hall, Ruggiero, and other NYPD officers acting under Ruggiero's supervision searched an apartment based on a tip from Velez. The action against all individual NYPD officers, other than Hall and Ruggiero was voluntarily dismissed by plaintiff. The case was tried before the Court, sitting with a jury, and went to verdict.

In short, the facts established at trial were that the search at the heart of this case resulted in the arrest of two suspects and the seizure of drugs and a gun. Velez was inside the apartment with the two arrestees when the officers arrived, but he was not arrested. Plaintiff argued that her son was killed in retribution for the search because his release identified him as the informant. The jury found that defendants were not liable for Velez's death.

Plaintiff has moved for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, arguing (1) a claim based on Monell v. New York City Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018 (1978) was incorrectly dismissed without submission to

1

the jury; (2) the jury instructions for a state law negligence claim were erroneous; and (3) the Court incorrectly dismissed a state law negligent training claim, which should have been submitted to the jury instead. Briefing was completed on December 22, 2011. The Court heard oral argument on March 5, 2012. For the reasons set forth below, the motion is denied.

## Standard of Review

"It is well-established that a district court may grant a new trial under Rule 59 only if it concludes that the jury reached a 'seriously erroneous result' or that the 'verdict is a miscarriage of justice.'" In re Vivendi Universal, S.A. Sec. Litig., 765 F. Supp.2d 512, 573 (S.D.N.Y 2011) (citing Manley v. AmBase Corp., 337 F.3d 237, 245 (2d Cir. 2003)); see also Raedle v. Credit Agricole Indosuez, 670 F.3d 411, 417-18 (2d Cir. 2012). Within that framework, "[a]n erroneous [jury] instruction requires a new trial unless the error is harmless." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (internal citations and quotations omitted). "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." Id. "An error is harmless only if the court is convinced that the error did not influence the jury's verdict." Id.

## Discussion

## I.     The Monell Claim Argument is Moot

Plaintiff argues her Monell claim should not have been dismissed because sufficient evidence was presented at trial to support its submission to the jury. Plaintiff admits, however, this argument is "potentially mooted" by the jury's finding that the officers did not commit a constitutional violation.[1]  (Motion at 6.) Plaintiff apparently presses this argument mainly to

---

[1] As announced in Monell, "to hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right."

preserve it for appellate review, urging that the authority requiring an underlying constitutional violation by the municipality's agents is poorly reasoned. (Motion at 6.) This Court is bound by the authority that plaintiff seeks to alter, and thus rejects plaintiff's argument that she is entitled to a new trial on her Monell claim despite the lack of a constitutional violation by any individual defendant.[2]

## II.   A Special Relationship Must be Established

Plaintiff argues that she was entitled to a jury instruction based on "ordinary negligence." The argument is wholly without merit. New York law requires the finding of a "special relationship" before an enforceable duty can be imposed in a police protection case. Cuffy v City of New York, 69 N.Y.2d 255, 260, 513 N.Y.S.2d 372, 505 N.E.2d 937 (1987) ("As a general rule, a municipality may not be held liable for injuries resulting from a simple failure to provide police protection. ... There exists, however, a narrow class of cases in which we have recognized an exception to this general rule and have upheld tort claims based upon a 'special relationship' between the municipality and the claimant." (citations omitted)). See also, Valdez v. City of New York, 18 N.Y.3d 69, 936 N.Y.S.2d 587, 960 N.E.2d 356 (2011). The "special relationship" rule is clearly on point given that the allegations supporting this claim focus entirely on a failure by the police to protect Anthony Velez, who had on occasion acted as a police informant.

---

Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983) (citations omitted).

[2] Dismissal of the Monell claim was warranted, in any event, because no pattern or practice of violation was shown. No evidence was presented that this given situation had ever occurred before 2004. The evidence was thus insufficient to impose liability on the City as a matter of law. Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991) ("a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy"); Morales v. New York City Police Dept., No. 97 CIV. 7151 (MGC), 1999 WL 169533, * 2 (S.D.N.Y 1999) ("Plaintiffs' claim arises from a single, isolated incident .... This pleading is insufficient to impose liability on the City."). There was nothing for the jury to determine.

Pointedly, none of the cases cited by plaintiff apply "ordinary negligence" case law in a police protection context. Certainly, plaintiff's reliance on Schuster v City of New York, 5 N.Y.2d 75, 180 N.Y.S.2d 265, 154 N.E.2d 534 (1958) is misplaced. First, the New York Court of Appeals itself has recognized Schuster as a "special relationship" case. See Cuffy, 69 N.Y.2d at 260 (citing Schuster as an example of a case where a tort claim was upheld "based upon a 'special relationship' between the municipality and the claimant"). Second, Schuster's own words indicate it simply provides an early incarnation of the special relationship test by its identification of a specific situation in which a special duty had been created. 5 N.Y.2d at 81 (explaining a "special duty" or "reciprocal duty" is created only in certain situations). Plaintiff's citation to Rodriguez v City of New York, 189 A.D.2d 166, 595 N.Y.S.2d 421 (1st Dept. 1993) is also unpersuasive. The Rodriguez court merely held it would not apply the special relationship test to particular conduct unrelated to police protection, i.e., to "the officer firing across [a] crowded street and hitting plaintiff." Id. at 173. The claim of negligence was totally independent of the victim's identity. In "special relationship" cases, the claim of negligence, as here, is hinged entirely to the identity of the victim – to the fact that the victim was different from the public at large. Plaintiff was not entitled, therefore, to an "ordinary negligence" charge and there was no error in failing to give one.

**III.    The Finding of a Special Relationship was Properly Given to the Jury**

Plaintiff contends that, even if she was correctly required to prove that a special relationship existed, Schuster required this Court to declare its existence as a matter of law. Plaintiff reads Schuster too broadly. Schuster, *at most*, held that a special relationship may exist as a matter of law when there is no dispute of material fact that a plaintiff has established (1) a victim had collaborated with the police *and* (2) the police knew that the individual was

4

threatened with harm because of his collaboration.  See, e.g., Greene v City of New York, 152
Misc.2d 786, 788, 583 N.Y.S.2d 766 (Sup. Ct., Queens County 1992) ("A special relationship
between an individual and a municipality has also been found to exist where the individual
collaborates with the police in the arrest or prosecution of a criminal and is threatened with
bodily harm as a result.  In [Schuster] the City was held liable when a young man, Arnold
Schuster, supplied information to the police which led to the arrest of the bank robber, Willie
Sutton, a notorious, dangerous fugitive. Mr. Schuster immediately received death threats which
he reported to police. His request for protection was denied and he was shot and killed three
weeks later.")  The evidence here did not compel the finding of a threat of harm, let alone a
reported threat of harm.  With such material facts in dispute on the evidence adduced at trial,
Schuster did not require the Court to find a special relationship existed as a matter of law.  The
question was one for the jury.

## IV.    The Jury was Properly Instructed on the Law of "Special Relationships"

Plaintiff argues that her negligence claim was against the City only, not Hall and
Ruggiero,[3] and that the Court erred by instructing the jury that the City's liability depended on
first finding Hall and/or Ruggiero liable, instead of merely finding some combination of involved
City agents liable.[4]  Correspondingly, plaintiff argues the Court's special relationship instruction
was erroneous because it required proving that Hall or Ruggiero had knowledge of potential

---

[3] Notably, plaintiff's description of this claim conflicts with the Joint Pretrial Order, which
describes the state law negligence claim as "Plaintiff's state law personal injury (survivor's
claim) and wrongful death claim based on negligence *against all defendants*." (Dkt. No. 84, at
3) (emphasis added.)  The "against all defendants" language is even more notable because the
Joint Pretrial Order described the negligent training claim as "against the City" alone. (Id., at 2-
3.)

[4] Further, in this connection, plaintiff reasserts her argument about her "ordinary negligence"
claim. It is academic. The Court has already determined, supra, that such a claim does not lie as
a matter of law against any defendant regardless of combination.

harm to Velez, instead of simply requiring proof that the City had such knowledge through some combination of any of its agents. Finally, as part of this argument, plaintiff contends the Court erred by stating on the verdict sheet that Hall or Ruggiero had to have "had knowledge" of potential harm to the decedent without also stating on the verdict sheet that the relevant standard was "knew or should have known."

There can be little dispute about what New York law requires as proof of a special relationship. Taken together, more to the point, the charge and verdict sheet correctly instructed the jury on it. The jury was charged, in sum and substance, that plaintiff would have to prove: "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." Cuffy, 69 N.Y.2d at 260 (citations omitted). Specifically, the verdict sheet included special interrogatories to obtain the jury's finding for each element of the special relationship test. The verdict sheet presented elements one and four in a single section. For the second and third elements, however, there were two sections, one for Hall and one for Ruggiero. Each section was identical, except for the names of the two officers. Plaintiff's assignment of error is directed only at element two. For that element, the Court instructed the jury in its charge that plaintiff must demonstrate, "knowledge on the part of the officers that inaction could lead to harm to Anthony Velez." The verdict sheet was more specific. It asked, "Did Plaintiff prove by a preponderance of the evidence that Defendant Hall had knowledge that his action or inaction could lead to harm to Anthony Velez." The jury answered "No". The same question was then

6

repeated for Ruggiero.  Again, the jury answered "No".[5]  Essentially, plaintiff argues now that instead of asking only about Hall and Ruggerio's knowledge, the verdict sheet should have asked, e.g., "Did Plaintiff prove by a preponderance of the evidence that *the City, through any combination of its agents,* had knowledge that action or inaction could lead to harm to Anthony Velez."  The failure to do so, plaintiff says, was error.

In Sorichetti v. City of New York, a case in which a plaintiff sued the City, but no individual police officers, for failing to protect her and her daughter from her former husband, the Court of Appeals determined that a special relationship existed, and found the second element was satisfied based on the "police department's knowledge."  65 N.Y.2d 461, 469, 492 N.Y.S.2d 591, 482 N.E.2d 70 (1985).  Consistent with Sorichetti, this Court acknowledges that, at least in some cases, the relevant question for element two of the special relationship test is whether the municipality was imparted with the required knowledge through various agents including non-defendants.  (Obviously, no one disputes that a municipality can only obtain knowledge through its agents.)  In Sorichetti, the requisite knowledge, the proof showed, was diffused.  The Court of Appeals found the City's knowledge was obtained because various municipal employees were aware of the risk the ex-husband posed.  Id. at 470.

A different reality was on trial here.  Plaintiff's argument fails because it is divorced from the evidence proffered in this case.  The evidence established that Ruggiero, who was the team supervisor, and Hall, Velez's principal handler when he was an official tipster, were the *only* municipal agents with knowledge relating to the potential harm plaintiff claims took her son's life at or after that risk of harm materialized.  There was no evidence presented to the jury that

---

[5] This separate questioning was to accommodate plaintiff's presentation of the negligence claim as being "against all defendants."  See. n. 3, supra.  In theory, the claim as expressed in the Joint Pretrial Order may have allowed for one officer to be found liable in negligence and not the other.  In any event, if either (or both) were liable, so would be the City.

any other officer, indeed any other agent or employee of the City, had any knowledge about the decedent and his role in the incident other than had been provided by Ruggiero or Hall. In brief, as the case was tried, there was no evidence to support any theory of special relationship liability against the City other than through Hall and/or Ruggiero. As the Court stated to the parties when entertaining objections to the then proposed verdict sheet, the City's "liability would be coincident and congruent with any finding of fault against either Hall or Ruggiero. If there's any finding of fault against Hall and Ruggiero, the City under the principle of respondeat superior, which the jury was also charged, is totally a verdict against the City as well."[6] (Tr. at 1248.) If there was the requisite knowledge to support a verdict for plaintiff, Hall and/or Ruggiero had to have it; if there was an act or omission (for example, the failure by Ruggiero's team to "arrest" Velez at the scene or to make alternate safety arrangements) that breached a duty to protect Velez, such act or omission had to be that of Hall and/or Ruggiero. In point of fact, as to any risk of harm to Anthony Velez resulting from a tip that brought him and the police to the target apartment, not only were Hall and Ruggiero the only City agents with knowledge of it, the proof convincingly established that Hall and Ruggiero had the identical relevant knowledge of it. Given the uncontradicted evidence at trial, whether Hall's knowledge and Ruggiero's knowledge were considered individually or collectively in "combination," the City's knowledge remains the same. The evidence, without the slightest doubt, allowed for no other path to municipal liability

---

[6] The charge went even further by actually directing that respondeat superior was satisfied and specifically instructing the jury that the City would be responsible if the jury were to find Hall or Ruggerio liable: "For this negligence claim, the actions of defendants Hall and Ruggerio were in furtherance of the City of New York's business and were within the scope of defendants Hall's and Ruggerio's authority. If you find that either defendant Hall and/or defendant Ruggerio negligently caused injury to the plaintiff, then the city of New York is legally responsible for such conduct of defendant Hall and/or Defendant Ruggerio."

on this claim.[7] In harmony with the case that plaintiff tried, which the Joint Pretrial Order declared included claims of negligence against Hall and Ruggiero personally as well as separately against the City, the Court's charge and the verdict sheet clearly instructed the jury that a finding of special relationship negligence against either Hall and/or Ruggiero was automatically a finding of special relationship negligence against the City of New York. Accordingly, the jury charge and the companion verdict sheet correctly instructed the jury on plaintiff's state law negligence claim.[8]

Finally, plaintiff challenges as insufficient the Court's use of the term "knowledge" on the verdict sheet. Plaintiff did not raise this objection during the charge conference on the verdict sheet and the objection is thus waived. See Thorsen v. County of Nassau, 722 F.Supp.2d 277, 287 (E.D.N.Y. 2010) (discussing waiver of objections). In any event, this argument is spurious. The Court, simply, instructed the jury based on the language routinely used by the New York Court of Appeals in describing the special relationship test. See, e.g., Cuffy, 69 N.Y.2d at 260. Moreover, and likely explaining the lack of pre-charge objection by plaintiff, the

---

[7] Plaintiff all but acknowledges this fact. (Motion Hearing of March 5, 2012, Tr., at 3 ("Mr. O'NEILL: ... In terms of the individual defendants, in the special relationship context, I don't think just off the top of my head that the actions of the other officers [apart from Hall and Ruggiero] are particularly material."); id. at 5 ("Mr. O'NEILL: ... Ruggiero is calling the shots and Hall, he kind of orchestrated everything even though he didn't have an official function in calling the shots"); id. at 5 ("Mr. O'NEILL: [Hall] had all the communications with Velez up until the events at issue including the ones that I think are in pretty serious dispute as to how Anthony Velez got to the fifth floor that evening...."))

[8] Alternately, because the jury found that neither Hall nor Ruggiero had the required knowledge, and in the complete absence of proof (a) that any other agent or employee of the City had relevant knowledge unknown to Hall and Ruggiero or (b) that Hall's relevant knowledge differed from Ruggiero's so that the combination of their relevant knowledge could be greater than the knowledge of either, the jury logically and properly determined in accordance with the charge that the City was not liable. Therefore, even assuming an error in the form of the questions asked on the verdict sheet, the Court declines to grant a new trial since it "is convinced that [any such] error did not influence the jury's verdict." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000) (internal citations and quotations omitted).

Court's actual instructions were more generous than plaintiff deserved. The Court charged the jury using the "ordinary" negligence standard of "knowledge." Specifically, the Court charged that a defendant was required "to guard against those risks or dangers of which he knew or by the exercise of due care should have known." The New York Court of Appeals, on the other hand, has explained that for the "special relationship" "knowledge" element to be satisfied, "a municipality's agent must be clearly on notice of palpable danger, as where it is so obvious that a layman would ascertain it without inquiry ...." Kovit v Estate of Hallums, 4 N.Y.3d 499, 797 N.Y.S.2d 20, 829 N.E.2d 1188 (2005); see also 1 NY PJI3d 2:24, at 275 (2012) (explaining that Kovit provides the standard for determining whether a municipality "will be deemed to have knowledge that its inaction could lead to harm..."). Put another way, while the jury was instructed that the relevant knowledge of Hall and Ruggiero should be based not only on the facts of which they had "actual" knowledge but also on facts of which they "should have" had knowledge through the use of due care, New York, though not requiring "actual" knowledge, does require a level of knowledge greater than the "ordinary" negligence standard of knowledge the Court charged. Plaintiff was the beneficiary of this oversight. Reading the instructions and the verdict sheet as a whole, plaintiff was not the victim of error preserved or unpreserved for appellate review. See, e.g., Altria Group, Inc. v. United States, 658 F.3d 276, 286 (2d Cir. 2011) (jury instructions should be viewed "as a whole" (quoting Boyce v. Soundview Tech. Grp., Inc., 464 F.3d 376, 390 (2d Cir. 2006))). A new trial on the state law negligence claim is not warranted.

## V.      The Court Properly Dismissed the Negligent Training Claim

Plaintiff also objects that the Court erred in dismissing her negligent training claim because (1) a claim of negligent training does not require that the employees were acting outside

10

their scope of employment, as a matter of law; and (2) sufficient evidence was presented to support the negligent training claim, as a matter of fact. Plaintiff, however, does not dispute that the relevant acts or omissions here occurred within the officers' scope of employment. Nor can there be any doubt that the great weight of authority teaches that a negligent training claim is viable under New York law *only* when the alleged wrongful conduct occurred outside the scope of employment. See Karoon v. New York City Transit Authority, 241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997) ("We find that defendants are entitled to summary judgment dismissing plaintiff's negligent hiring, retention and training claims. Generally, where an employee is acting within the scope of his or her employment, thereby rendering the employer liable for any damages caused by the employee's negligence under a theory of respondeat superior, no claim may proceed against the employer for negligent hiring or retention. This is because if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training." (internal citations omitted)); see Chavez v. City of New York, 33 Misc. 3d 1214(A) (Sup. Ct., New York County Sep. 26, 2011) ("a claim for negligent hiring, training and supervision must be dismissed when an employer has conceded that its employee was acting within the scope of his or her employment"); Felder v. City of New York, 2011 WL 4424779, at *4 (Sup. Ct. New York County Sep. 13, 2011); see also Cerbelli v. City of New York, No. 99–CV–6846 (ARR)(RML), 2008 WL 4449634, *6 (E.D.N.Y. Oct. 1, 2008) ("To maintain a claim against a municipal employer for 'negligent hiring, training, and supervision' of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of employment when committing the tort." (citations omitted)); Gurevich v. City of New York, No. 06 Civ. 1646 (GEL), 2008 WL

11

113775, at *6 (S.D.N.Y. Jan. 10, 2008) ("the City concedes that the defendant officers were acting within the scope of their employment at all relevant times. Accordingly, plaintiff's claim for negligent hiring, training, and retention is barred as a matter of law." (citations omitted)).

Plaintiff does identify <u>Meistinsky v City of New York</u>, 285 App Div 1153, 140 N.Y.S.2d 212 (2d Dep't 1955), aff'd, 309 NY 998 (1956)), a 57-year old Second Department case that allowed a negligent training claim to survive where the alleged negligent act appears to have occurred while the actor acted within the scope of employment. But, <u>Meistinsky</u> considered only whether a <u>prima facie</u> case was established and gives no indication the scope of employment issue was even considered. Ultimately, plaintiff is left to rely on <u>Barton v. City of New York</u>, 15 Misc.3d 504, 831 N.Y.S.2d 882 (Sup. Ct., Kings County 2007), in hope of suggesting an inconsistency or exception in New York law. It is not persuasive. <u>Barton</u>, a trial level decision without any binding authority, was focused on how proximate cause must be satisfied and, unlike here, involved a case in which it was unclear whether a police officer was acting within the scope of employment. <u>Id.</u> at 506-09.

Plainly, with no question that the alleged acts and omissions comprising the gravamen of the complaint were all chargeable to officers performing within the scope of their employment, the negligent training claim fails as a matter of law. The Court's ruling to that effect was proper. A new trial is not warranted on this ground either.

12

## Conclusion

For the forgoing reasons, the motion for a new trial is denied in its entirety. The Clerk is directed to maintain the case on the closed docket.

**SO ORDERED.**

Dated: Brooklyn, New York
     March 31, 2012

                                   s/Eric N. Vitaliano

                                  ERIC N. VITALIANO
                                  United States District Judge